UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIVIAN FORCHIELLI,

    Plaintiff,

v.

PAOLO FORCHIELLI,

    Defendant.
_____/

Case No. 2:22-cv-12824
Magistrate Judge Kimberly G. Altman

**MEMORANDUM AND ORDER
GRANTING IN PART AND DENYING IN PART AS MOOT
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 32)
AND
DENYING PLAINTIFF'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 35)
AND
SETTING DATES FOR THE SUBMISSION OF A JOINT
STATEMENT AND SCHEDULING A STATUS CONFERENCE**

I.    Introduction

This is an action for immigration financial support under 8 U.S.C. § 1183a. Vivian Forchielli (Vivian) is suing her ex-husband Paolo Forchielli (Paolo)[1] for financial support under the Affidavit of Support Form I-864 (Affidavit of Support)

---

[1] The parties will be referred to by their first names because they share the same last name.

1

that he submitted to the federal government when Vivian immigrated to the United States. *See* ECF No. 7. The parties have consented to the undersigned's jurisdiction. (ECF No. 30).

At the request of the parties, and in part to narrow the scope of discovery, early cross-motions for partial summary judgment have been filed. (ECF Nos. 32, 35). The motions have been fully briefed, (ECF Nos. 40, 41), and were the subject of a hearing held on November 16, 2023. (ECF No. 38).

For the reasons set forth below, Paolo's motion, (ECF No. 32), will be GRANTED IN PART and DENIED IN PART AS MOOT, and Vivian's motion, (ECF No. 35), will be DENIED. Specifically, the Court agrees with Paolo that he is only obligated to provide Vivian with annual support equaling 125% of the Federal poverty line after accounting for Vivian's income. Vivian's financial information is relevant, while Paolo's is not. Further, the Court accepts the parties' representations that the issue concerning alimony is now moot. Finally, the parties will be directed to submit a joint statement described in detail below and the Court will set a status conference to chart the future course of the case.

## II.  Background

The following facts are gleaned from Vivian's amended complaint.

Vivian and Paolo divorced after an eight-year-long marriage. (ECF No. 7, PageID.82). Vivian is a citizen of Brazil and Paolo is a citizen of both Italy and

the United States. (*Id.*). The couple lived in various countries throughout their relationship, including Brazil, Italy, the Netherlands, and the United States. (*Id.*). Their minor child was born in the Netherlands, and the couple lived there until 2017, at which point Paolo decided to move the family to the United States. (*Id.*).

Paolo sponsored Vivian's immigration to the United States. (*Id.*, PageID.81-82). As part of the sponsorship process, Paolo signed an Affidavit of Support promising to financially support Vivian. (*Id.*, PageID.80-82). After residing in Michigan for 180 days, Paolo left his family and filed for divorce. (*Id.*, PageID.83). Vivian was a housewife and stay-at-home mother for the entirety of the couple's marriage and relied on Paolo for financial support. (*Id.*). Vivian claims that following their divorce, Paolo has failed to adequately support her as contractually obligated under the Affidavit of Support.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley*

*Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

IV.   Discussion

A.   Scope of the Motions

In the order granting the parties' leave to file early cross-motions for partial summary judgment, the following three issues were identified as those to be briefed for decision:

1. Whether 125% of the Federal Poverty Level is the minimum [floor] or maximum [ceiling] for the financial support required under the Affidavit of Support.

2. Whether alimony can be used as a factor to determine or offset Paolo's financial support obligation.

3. Whether either party has an obligation to provide financial information under the Affidavit of Support once it is accepted and becomes a binding contract with the USCIS.

4

(ECF No. 25, PageID.433). The second issue will not be discussed because counsel for both parties represented at the hearing that the issue was now moot. Issues one and three will be addressed in turn below.

### B. Issue I – Affidavit of Support

The main dispute in this case is how much financial support Paolo is required to provide to Vivian under the Affidavit of Support. In other words, whether the 125% of the Federal Poverty Level sets a minimum floor or maximum ceiling. As explained below, it is a ceiling.

#### 1. The Statute – 8 U.S.C. § 1183a

The requirements for an Affidavit of Support are set forth by 8 U.S.C. § 1183a, which provides:

**(a) Enforceability**

  **(1) Terms of affidavit**

> No affidavit of support may be accepted by the Attorney General or by any consular officer to establish that an alien is not excludable as a public charge under section 1182(a)(4) of this title unless such affidavit is executed by a sponsor of the alien as a contract—
>
>> (A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable;

> (B) that is legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit (as defined in subsection (e)1), consistent with the provisions of this section; and
>
> (C) in which the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions brought under subsection (b)(2).

The statute further provides that the sponsored alien may bring an action to enforce the Affidavit of Support. 8 U.S.C. § 1183a(e)(1).[2]

This lawsuit brought by Vivian to enforce the Affidavit of Support is thus expressly authorized by statute. Rather than claim he owes Vivian no financial support, Paolo argues that the statutory language clearly demonstrates that he is only obligated to provide Vivian with "support to maintain [her] at an annual income that is *not less than 125 percent of the Federal poverty line* during the period in which the affidavit is enforceable[.]" 8 U.S.C. § 1183a(a)(1)(A) (emphasis added). For her part, Vivian argues that the statutory language provides a floor of support, rather than a ceiling. As such, she contends that under the circumstances of this case, she is entitled to financial support in excess of 125% of the Federal poverty line for 2022, 2023, and going forward.

---

[2] The statute also sets forth the ways in which the sponsor's obligation under an Affidavit of Support can be terminated; however, Paolo does not contend that his obligation has been terminated at this time.

2.   Relevant Caselaw

The Sixth Circuit has not yet decided a case involving the interpretation of 8 U.S.C. § 1183a(a)(1)(A). As such, the parties both cite to cases outside of this Circuit for support of their positions. Paolo relies on federal cases including *Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016) and state court cases. Meanwhile, Vivian primarily relies on one case from the Michigan Court of Appeals.

In *Erler*, the Ninth Circuit had to

> decide what it means for a sponsor of an intending immigrant to provide the immigrant "with any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size" when the sponsored immigrant no longer resides in the sponsor's household.

824 F.3d at 1177. The Ninth Circuit also considered "how to measure the immigrant's post-separation household size and the immigrant's post-separation income." *Id.*

With regard to household size, the Ninth Circuit explained that "in the event of a separation, the sponsor's duty of support must be based on a household size that is equivalent to the number of sponsored immigrants living in the household, not on the total number of people living in the household." *Id.* And with regard to the ultimate question of how much support a sponsor is obligated to provide, the Ninth Circuit held "that when a sponsored immigrant separates from the sponsor's household, the sponsor's obligation under the affidavit of support is to provide the

7

immigrant with whatever support is necessary to maintain him or her at an annual income of *at least 125% of the poverty guidelines for a one-person household.*" *Id.* at 1179-1180 (emphasis added). The only factor that would change this is

> [i]f the sponsor agreed to support more than one immigrant, and those immigrants separate from the sponsor's household and continue to live together, then the sponsor must provide them with whatever support is necessary to maintain them at an annual income of at least 125% of the poverty guidelines for a household of a size that includes all the sponsored immigrants.

*Id.* at 1180.

Applying the Ninth Circuit's approach here means that Paolo would be required to provide sufficient support to maintain Vivian at an annual income of at least 125% for a one-person household. *See Cyrousi v. Kashyap*, 386 F. Supp. 3d 1278, 1288 (C.D. Cal. 2019) (granting partial summary judgment to sponsors after determining that there was no breach of the Affidavit of Support during the years in which the parties agreed that the immigrant's "income was more than 125% of the Federal Poverty Guidelines for a one-person household"). While Paolo could provide support in excess of this figure, he would not be required to do so.

Most state courts asked to interpret 8 U.S.C. § 1183a(a)(1)(A) have done so in the same way as the Ninth Circuit. For example, Paolo cites to *Naik v. Naik*, 399 N.J. Super. 390 (2008) and *Backman v. Backman*, 364 Ga. App. 549 (2022).

In *Naik*, the New Jersey Superior Court explained that it

8

> construe[d] [the statutory] language to mean that the sponsor is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size. Rather, considering the sponsored immigrant's own income, assets and other sources of support, *the sponsor must pay any deficiency in order to meet this minimum level or floor*.

399 N.J. Super. at 398 (emphasis added). Similarly, in *Backman*, the Georgia Court of Appeals held that "under prevailing case law, Wife was not entitled to additional support pursuant to Husband's I-864 obligation because 'a sponsor is required to pay only the difference between the sponsored non-citizen's income and the 125% of poverty threshold.'" 364 Ga. App. at 554-555 (quoting *Barnett v. Barnett*, 238 P.3d 594, 598 (Alaska 2010)).

The only case that Vivian cites in support of her position is *Greenleaf v. Greenleaf*, No. 299131, 2011 WL 4503303 (Mich. Ct. App. Sept. 29, 2011). Vivian's reliance on *Greenleaf* is problematic. First, it is an unpublished, per curiam opinion of the Michigan Court of Appeals. "A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts." *Griffin v. Reznik*, 609 F. Supp. 2d. 695, 703 (W.D. Mich. 2008). Under Michigan Court Rule 7.215(C)(1), "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." Accordingly, *Greenleaf* does not hold precedential value in either Michigan state courts or this Court. Further, even if *Greenleaf* was a published case, "[w]hile federal courts must defer to a State court's interpretation of its own law federal courts owe no deference to a

9

state court's interpretation of a federal statute[.]" *United States v. Miami Univ.*, 294 F.3d 797, 811 (6th Cir. 2002) (internal citations omitted).

Second, *Greenleaf* is unpersuasive. The defendant in *Greenleaf* appealed the judgment entered in her divorce case. *Greenleaf*, at *1. Even though the plaintiff had executed an Affidavit of Support for both the defendant and her daughter, the trial court only awarded the plaintiff $750 per month in spousal support for a period of one year. *Id.* On appeal, the defendant argued that the trial court erred in its spousal support determination because it awarded "substantially less than 125 percent of the Federal Poverty Guidelines for a two-person household." *Id.* at *2. The defendant also argued that "the trial court erred in limiting [the] plaintiff's support obligation to one year when the Affidavit of Support expressly provides the circumstances that would terminate [his] support obligation." *Id.*

In its analysis, the Michigan Court of Appeals stated that the "appeal concern[ed] the interplay of the Affidavit of Support and any award of spousal support." *Id.* The court of appeals went on to explain that the

> [p]laintiff's obligation under the Affidavit of Support to provide [the] defendant with any support necessary to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines for her household size is separate and distinct from any obligation to pay spousal support. [The] [p]laintiff's obligation under the Affidavit of Support arises from a contract, and exists regardless of whether the parties divorce. His obligation must be determined by reference to the terms of the contract.

10

*Id.* at *3. The court determined that "[b]ecause [the] plaintiff's equitable obligation to pay spousal support under appropriate circumstances is separate and distinct from his contractual obligation imposed by the Affidavit of Support, we conclude that the trial court erred in conflating the two obligations and applying them in a manner that it found equitable." *Id.* After so determining, the court

> vacate[d] the spousal support provision of the judgment of divorce and remand[ed] for further proceedings. On remand, the trial court shall first determine [the] plaintiff's obligation under the Affidavit of Support and enforce that obligation. It shall determine [the] plaintiff's obligation in reference to the terms of the Affidavit of Support. In this context, we note that the Affidavit of Support provides that [the] plaintiff will provide the necessary support to maintain [the] defendant "at an income that is *at least 125 percent* of the Federal Poverty Guidelines" for her household size," [sic] not "*up to 125 percent* of the poverty level" as stated by the trial court at the evidentiary hearing (emphases added). In addition, because the Affidavit of Support provides the six circumstances when [the] plaintiff's obligation will cease, the trial court may not set its own date for the termination of [the] plaintiff's obligation. Then, after having determined [the] plaintiff's obligation under the Affidavit of Support, the trial court shall make a separate determination whether [the] defendant is entitled to spousal support. In making its spousal support decision, the trial court shall utilize its discretion and may consider [the] plaintiff's obligation under the Affidavit of Support, as that obligation affects [the] plaintiff's ability to pay and the parties' needs and present situations.

*Id.* (internal citations and quotations omitted).

The full weight of authority from other courts—both federal and state—is against the "we note" statement in *Greenleaf* and in addition to not being precedential, the Court finds it to be unpersuasive. The Court is particularly

11

unpersuaded by the *Greenleaf* court's reliance on Michigan contract law when federal courts, including the Eleventh Circuit, have indicated that this is not the correct approach. *See Belevich v. Thomas*, 17 F.4th 1048, 1051 (11th Cir. 2021) ("As an initial matter, we conclude that federal law, not state contract law, governs this question."); *see also Burkhalter v. Burkhalter*, No. EDCV 19-272 JGB, 2021 WL 6102423, at *2 (C.D. Cal. Sept. 9, 2021) ("That is because at issue is not state contract law, but federal law.").

In sum, while the *Greenleaf* court correctly analyzed a few issues related to the Affidavit of Support, it ultimately erred in suggesting that an individual could be ordered to pay in excess of 125% of the Federal poverty line under the Affidavit of Support. It also erred when instructing the trial court that it needed to consider spousal support in addition to the Affidavit of Support, when spousal support is properly considered income for the immigrant that should be deducted from the sponsor's annual financial obligation. Overall, the Court finds the legal analysis in *Erler* and its progeny along with *Naik* and *Backman* to be persuasive, while it is unpersuaded by *Greenleaf*.

3. The Form

In addition to relying on *Greenleaf*, Vivian argues that the specific language used on Form I-864 varies from the statutory language in a way that supports her position. The form executed by Paolo states that the sponsor is agreeing to

"[p]rovide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size." (ECF No. 7-2, PageID.100). Vivian contends that by stating "any support necessary," the form suggests that financial support beyond 125% of the Federal poverty line may be required.

This argument, however, is out of sync with the purpose of an Affidavit of Support. As one district court has explained:

> Under 8 U.S.C. § 1183a, immigrants who are likely to become a public charge are ineligible for admission into the United States unless their applications for admission are accompanied by an Affidavit of Support Form I–864. A person petitioning for the admission of a family-sponsored immigrant must sign a Form I–864 affidavit, which is a legally enforceable contract between the sponsor and the sponsored immigrant. By signing the affidavit, the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable. 8 U.S.C. § 1183a(a)(1)(A).

*Nasir v. Shah*, No. 2:10–cv–01003, 2013 WL 3085208, at *2 (S.D. Ohio June 18, 2013). Ultimately, the purpose of requiring an Affidavit of Support when sponsoring an immigrant is to ensure that the immigrant never becomes a public charge, or in other words, does not become the recipient of "any means-tested public benefit." *See* 8 U.S.C. § 1183a(b). By requiring a sponsor to support an immigrant at a level that is not less than 125% of the Federal poverty line, the government is able to ensure that taxpayer funds are not used to support family-sponsored immigrants.

13

4. In Sum

Paolo is contractually obligated under the Affidavit of Support to provide financial support to Vivian in the amount of 125% of the Federal poverty line for a one-person household, offset by Vivian's annual income. This determination is supported by caselaw from the Ninth Circuit in addition to caselaw from state and federal courts around the country. Further, it is in agreement with the plain language of the statute and the purpose behind requiring an Affidavit of Support when sponsoring an immigrant who is likely to become a public charge.

C. Issue 3 – Disclosure of Financial Information

Given that Paolo's required financial support to Vivian must be offset by her own income, Vivian's financial information is clearly relevant in these proceedings. On the other hand, Paolo's financial information is not relevant and thus not discoverable because his support obligation is not affected by his financial situation. Paolo is contractually obligated under the Affidavit of Support to financially support Vivian regardless of his finances. Thus, the only dispute can be as to what type of financial information is discoverable from Vivian.

Federal courts have approached the question of how to calculate the immigrant's annual income differently, choosing one of two approaches.

> Courts have employed two different approaches in calculating the sponsored immigrant's income and the 125% poverty threshold to determine liability and damages: some compare the immigrant's aggregate income for the relevant period with the sum of the 125% poverty thresholds during those years while others compare the immigrant's annual income for each year at issue with the 125% poverty threshold for each year.

*Belevich v. Thomas*, No. 2:17-cv-1193-AKK, 2019 WL 2550023, at *5 (N.D. Ala. June 20, 2019) (internal citations omitted) (citing cases). As to what constitutes income, "courts have generally interpreted a sponsored immigrant's 'income' expansively, including the immigrant's government benefits, educational grants, and alimony, if any." *Id.*

The Court will use the second approach set forth by *Belevich*. Only two years are at issue here—2022 and 2023. This means it will not be particularly difficult nor time consuming to calculate Vivian's income for each year at issue. The issue of what Vivian's income was for each year will be decided at a later date. As will be discussed below, the parties will prepare a joint statement on the issue in advance of a status conference with the court. Whether additional discovery is necessary will be discussed at the status conference.

## V. Conclusion

For the reasons stated above, Paolo's motion, (ECF No. 32), is GRANTED on issues one (Affidavit of Support) and three (disclosure of financial information) and DENIED AS MOOT on issue two (consideration of alimony). Vivian's

motion, (ECF No. 35), is DENIED.

With these preliminary legal issues resolved, the remaining issue in this case is the amount of financial support Paolo owes to Vivian for 2022, 2023, and going forward. The parties shall address this issue in a joint statement to be filed on the docket on or before **Thursday, December 14, 2023.** The joint statement must not exceed **five (5) pages** and should include each party's position accompanied by citations to relevant caselaw on the following for both 2022 and 2023:

- The amount of financial support owed to Vivian after taking into consideration the relevant starting point (125% of the Federal poverty line) and her alleged income.
- The amount of prejudgment interest owed to Vivian.
- The amount of attorneys' fees and costs that should be awarded to Vivian.

The Court will hold an in-person status conference on **Thursday, December 21, 2023 at 2:00 p.m**. to discuss the joint statement and chart the future course of the case.

SO ORDERED.

Dated: November 29, 2023　　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan　　　　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

16

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 29, 2023.

                                                      s/Carolyn Ciesla
                                                      CAROLYN CIESLA
                                                      Case Manager